IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY<br><br>    Plaintiff,<br><br>v.<br><br>STATELINE CONSTRUCTION, LLC; LIBERTY HILL ESTATES OF TEXARKANA, INC.; BRAD A. WARRAN; KERI A. WARRAN; JODY L. LUTTRELL; AND JOVONNA MICHELE LUTTRELL<br><br>    Defendants. | CIVIL ACTION NO. 5:23-cv-00149 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Atlantic Specialty Insurance Company (the "ASIC" or the "Surety"), files this Original Complaint against Defendants Stateline Construction, LLC; Liberty Hill Estates of Texarkana, Inc.; Brad A. Warren; Keri A. Warran; Jody L. Luttrell; and Jovonna Michele Luttrell (collectively "Defendants"), and respectfully states as follows:

### I.    PARTIES

1. Atlantic Specialty Insurance Company is a corporation organized under the laws of the State of New York with its principal place of business located in New York, New York, which is the location from which ASIC's high-level officers direct, control, and coordinate ASIC's corporate activities. ASIC is duly qualified and authorized to transact business within the State of Texas. For purposes of diversity jurisdiction, ASIC is a citizen of New York.

2. Upon information and belief Stateline Construction, LLC ("Stateline") is a Texas limited liability company with its principal place of business in Texarkana, Texas. Upon

information and belief, Stateline's sole member is Brad Warren. Brad Warren is a citizen of the State of Texas. As such, for purposes of diversity jurisdiction, Stateline is a citizen of Texas. Stateline may be served with process through its registered agent, Brad Warran at 8098 FM 1397, Texarkana, TX 75503, or wherever he may be found.

3. Upon information and belief Liberty Hill Estates of Texarkana, Inc. ("Liberty Hill") is a Texas for-profit corporation with its principal place of business in Texarkana, Texas. As such, for purposes of diversity jurisdiction, Liberty Hill is a citizen of Texas. Liberty Hill may be served with process through its registered agent, Brad Warran at 8098 FM 1397, Texarkana, TX 75503, or wherever he may be found.

4. Upon information and belief, Defendant Brad A. Warran resides in Texarkana, Texas and is a citizen of Texas. Mr. Warran may be served with process at his residence at 8098 FM 1397, Texarkana, TX 75503, or wherever he may be found.

5. Upon information and belief, Defendant Keri A. Warran resides in Texarkana, Texas and is a citizen of Texas. Mrs. Warran may be served with process at her residence at 8098 FM 1397, Texarkana, TX 75503, or wherever she may be found.

6. Upon information and belief, Defendant Jody L. Luttrell resides in Holly Lake Ranch, Texas and is a citizen of Texas. Mr. Luttrell may be served with process at his residence at 237 Saddleback Lane, Holly Lake Rach, TX 75765, or wherever he may be found.

7. Upon information and belief, Defendant Jovonna Michele Luttrell resides in Holly Lake Ranch, Texas and is a citizen of Texas. Mrs. Luttrell may be served with process at her residence at 237 Saddleback Lane, Holly Lake Rach, TX 75765, or wherever she may be found.

## II. JURISDICTION AND VENUE

8. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and cost.

9. Because the Plaintiff, ASIC, is a citizen of New York for diversity purposes, and Defendants are all citizens of Texas for diversity purposes, complete diversity exists, and this Court has diversity jurisdiction over this matter.

10. Venue is proper in this district under 28 U.S.C. § 1391(b) in that some of the Defendants either reside or maintain a principal place of business in this district in the State of Texas.

## III. FACTUAL ALLEGATIONS

**A.   The Indemnity Agreement**

11. To induce ASIC to issue the Bonds (as hereinafter defined), on or about March 1, 2021, Stateline; Liberty Hill; Brad Warren; Keri Warren; Jody L. Luttrell; and Jovonna Michele Luttrell (collectively referred to as the "Indemnitors") each executed a General Agreement of Indemnity, the purpose of which was to induce the ASIC to furnish bonds on behalf of Stateline and a promise to protect and completely indemnify ASIC from any loss or expense it may incur arising from or related to the issuance of any such Bonds. A true and correct copy of the March 1, 2021 General Agreement of Indemnity (the "Indemnity Agreement"), is attached hereto as ***Exhibit "A"*** and fully incorporated herein for all purposes.

12. Under the express terms of the Indemnity Agreement, the Indemnitors promised to exonerate, indemnify, and keep ASIC indemnified from and against all loss that ASIC has incurred

or anticipates that it will incur by reason of issuing the Bonds (as hereinafter defined). Specifically, pursuant to the Indemnity Agreement, the Indemnitors agreed as follows:

> Indemnitors agree to pay to Surety upon demand: … Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss.

(***Exhibit "A,"*** p. 2).

13. Under the express terms of the Indemnity Agreement, the categories of loss ("Loss") is broadly and generally defined as including, *inter alia*, as:

> All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of: (a.) Surety having executed, provided or procured any Bond; (b.) any Default under this Agreement by any of the Indemnitors; (c.) Surety enforcing any of the covenants or conditions of this Agreement; (d.) Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or (e.) Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

(***Exhibit "A,"*** p. 2).

14. To the extent that ASIC makes any payments under the Bonds, the Indemnitors further agreed that "[a]n itemized statement of loss and expense incurred by Surety, sworn to by

an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit by Surety against Indemnitors." (***Exhibit "A,"*** p. 2).

15. Further, by execution of the Indemnity Agreement in favor of ASIC, the Indemnitors promised and obligated themselves to fully collateralize ASIC, upon demand, if losses were either incurred or anticipated by ASIC in connection with issuing bonds.

> The Indemnitors will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Indemnitors will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations. Indemnitors.

(***Exhibit "A,"*** p. 3) (Emphasis added).

16. The Indemnitors further promised and agreed that "[u]ntil Surety shall have been furnished with the competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Indemnitors for the purpose of examining, copying or reproducing them." (***Exhibit "A,"*** p. 4).

**B.     ASIC's Incurred Loss and Anticipated Loss**

17. In reliance upon its rights under the Indemnity Agreement, ASIC issued six (6) performance bonds and payment bonds on behalf of Stateline, as principal ("Bonds").

18. In September and early October of 2023, ASIC was in receipt of information regarding Stateline's deteriorating financial condition and Stateline's inability to perform or meet its obligations under the projects that were covered by the Bonds and the Indemnity Agreement.

19. By a letter dated October 10, 2023, ASIC demanded the Indemnitors post collateral security to ASIC in the amount of $3,000,000.00 by October 27, 2023 representing the amount ASIC deemed necessary as of the date of that letter to protect and exonerate ASIC from Loss, as

well as actual or anticipated expenses, costs, and fees. A true and correct copy of the October 10, 2023 Letter is attached hereto as ***Exhibit "B"*** and fully incorporated herein for all purposes.

20. On or about October 17, Stateline began to effectively abandon the bonded projects by removing its work crews from projects covered by the Bonds.

21. In the following days and weeks, ASIC received various notices to cure and notices of default from the obligees on the Bonds regarding Stateline's performance on the projects covered by the Bonds.

22. In addition to failing to post collateral, by virtue of receiving notices to cure and notices of default on the projects, Stateline is in default of the Indemnity Agreement and ASIC faces liability and may be forced to make payments in connection to the performance claims against the Bonds.

23. In addition, ASIC has been exposed to liability and will continue to be exposed to liability on the Payment Bonds from claims made by Stateline's subcontractors, suppliers, materialmen, and employees that have not been paid for labor and materials provided in connection with said bonded projects. The Performance Bond claims and the Payment Bond claims are hereinafter collectively referred to as the "Claims."

24. As a result of the Claims against the Bonds, ASIC was forced to retain counsel and has incurred and will continue to incur attorneys' fees and costs that were solely incurred as a result of the claims against the Bonds. Moreover, ASIC has incurred and will continue to incur additional attorneys' fees and costs in prosecuting this action for indemnity against the Indemnitors.

25. While ASIC's losses, costs, and expenses are unknown and continue to accrue, ASIC anticipates such losses, costs, and expenses to be in excess of $3,000,000.00 (the "Anticipated Loss").

26. ASIC was forced to file this Complaint and has incurred and will continue to incur losses, attorneys' fees, expert fees, consultant fees, costs, and expenses that have solely been incurred as a result of having been surety on the Bonds.

27. All conditions precedent to recovery by ASIC from the Indemnitors have occurred or have been performed.

## IV. CAUSES OF ACTION

### Count I
### *Specific Performance – Collateral Security and Access to Books and Records*

28. ASIC incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

29. Despite the explicit and unambiguous language of the Indemnity Agreement and the written demand letters from ASIC, the Indemnitors have refused to perform or honor its specific obligations to indemnify, exonerate, and/or collateralize ASIC.

30. ASIC issued written demands to the Indemnitors on October 10, 2023, notifying the Indemnitors that ASIC was aware of information regarding Stateline's financial condition that exposed ASIC to liability under the Bonds and demanding that the Indemnitors adhere to their collateral security requirements contractually agreed to in the Indemnity Agreement.

31. The explicit and unambiguous language of the Indemnity Agreement afforded ASIC with unconditional rights and imposed specific obligations on the Indemnitors, simply upon demand, to exonerate and/or collateralize ASIC under the Claims on the Bonds.

32. The Indemnitors have refused to perform their specific obligations to exonerate ASIC under the Bonds and/or to post collateral to secure all potential Loss of ASIC in connection with the Bonds.

33. As a result of the Claims, ASIC has "right to free access at reasonable times to the books, records and accounts of each of the Indemnitors for the purpose of examining, copying or reproducing them;" however, the Indemnitors have not provided ASIC with such access.

34. For these reasons, ASIC is entitled to specific performance by the Indemnitors of the provisions of the Indemnity Agreement relating to its specific obligations to procure the complete discharge of ASIC under the Bonds, to post collateral to secure all potential Loss of ASIC in connection with the Bonds, to provide ASIC with complete and unrestricted access to the Indemnitors' books and records, and/or in the enforcement of the Indemnity Agreement.

35. Based on the failure of the Indemnitors to perform its contractual obligations, ASIC is entitled to judgment from this Court, compelling the Indemnitors, each jointly and severally, (a) to perform its specific obligations, which the Indemnitors are specifically obligated to perform under the Indemnity Agreement, (b) to fully exonerate ASIC under the Bonds, (c) to provide collateral to ASIC in an amount sufficient to discharge any Loss of ASIC, and (d) to provide ASIC with full access to the Indemnitors books and records.

## Count II
## Breach of Indemnity Agreement

36. AICS incorporates herein by reference, as if fully set forth, the allegations contained in the preceding paragraphs.

37. The Indemnitors owed ASIC contractual obligations arising out of the Indemnity Agreement.

38.     Indemnitors have failed, delayed, refused, or otherwise been unable to fully and satisfactorily perform their contractual obligations and/or discharge indebtedness arising under various construction contracts resulting in the Claims on the Bonds. The Indemnitors' failures and material breaches have resulted in direct and indirect Loss to ASIC.

39.     ASIC has incurred damages as a result of Indemnitors' actions and inactions in that, as of the date of this filing, ASIC has Incurred Loss and Anticipated Loss, and continues to incur Loss, as a result of issuance of the Bonds.

40.     Under the general provisions of the Indemnity Agreement the Indemnitors are obligated, jointly and severally, to "protect, exonerate and indemnify the Surety." (***Exhibit "A,"*** p. 5). The Indemnity Agreement defined Loss broadly to include all "costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety." (***Exhibit "A,"*** p. 2).

41.     Under the provision titled Security to Surety and the General Provisions of the Indemnity Agreement, the Indemnitors are obligated to "deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligations." (***Exhibit "A,"*** p. 5).

42.     Pursuant to the Indemnity Agreement, on October 10, 2023, ASIC demanded that the Indemnitors deposit collateral relative to the claims or otherwise exonerate, indemnify, and save harmless ASIC from Loss and exposure associated with Indemnitors' default under the Indemnity Agreement.

43. Despite ASIC's demand, to date, the Indemnitors have failed and/or refused to exonerate, collateralize, and indemnify ASIC or to otherwise pay ASIC an amount sufficient to discharge the Loss or Claims against ASIC from having issued the Bonds.

44. The failure of the Indemnitors to deposit the demanded collateral with ASIC constitutes a material breach of the Indemnity Agreement. Further, the failure of the Indemnitors to exonerate, indemnify, and save harmless ASIC from the Claims constitutes a material breach of the Indemnity Agreement. Each of these failures by the Indemnitors constitutes a Default under the Event of Default provision of the Indemnity Agreement. The wrongful acts of the Indemnitors constitute independent material breaches of the Indemnity Agreement, resulting in damages to ASIC. (***Exhibit "A"***).

45. Under the Indemnity Agreement, the Indemnitors are jointly and severally liable to ASIC for all of ASIC's Loss, including attorney's fees, in connection with claims on the Bonds. (***Exhibit "A"***). Further, ASIC is entitled to pre-judgment and post-judgment interest at the maximum rate permitted by law. (***Exhibit "A,"*** p. 2).

46. ASIC is therefore entitled to payment by the Indemnitors for all of ASIC's Loss resulting from the issuance of the Bonds.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Atlantic Specialty Insurance Company respectfully requests that Defendants Stateline Construction, LLC; Liberty Hill Estates of Texarkana, Inc.; Brad A. Warren; Keri A. Warren; Jody L. Luttrell; and Jovonna Michele Luttrell be cited to appear and answer herein and, upon final trial thereof, that Atlantic Specialty Insurance Company receive:

1. The specific performance relief described herein against Stateline Construction, LLC; Liberty Hill Estates of Texarkana, Inc.; Brad A. Warren; Keri A. Warren; Jody L. Luttrell; and Jovonna Michele Luttrell,

jointly and severally, compelling them to (a) perform their specific obligations under the Indemnity Agreement, (b) fully exonerate the Atlantic Specialty Insurance Company under the Bonds, (c) provide collateral to Atlantic Specialty Insurance Company in an amount sufficient to discharge any Loss of the Surety in the sum of $3,000,000.00 plus additional funds necessary to secure the loss, costs, expenses, court cost, counsel fees expended and/or to be expended as necessary in order to enforce the Indemnity Agreement, and (d) provide Atlantic Specialty Insurance Company with full access to the Indemnitors' books and records;

2. Judgment against Defendants Stateline Construction, LLC; Liberty Hill Estates of Texarkana, Inc.; Brad A. Warren; Keri A. Warren; Jody L. Luttrell; and Jovonna Michele Luttrell, jointly and severally, for amounts necessary to indemnify and exonerate Atlantic Specialty Insurance Company from all liability asserted against it;

3. Pre-judgment and post judgment interest at the maximum rate permissible at law or in equity;

4. Costs of this suit and attorneys' fees; and

5. Such other and further relief to which the Atlantic Specialty Insurance Company is justly entitled.

Respectfully submitted,

**DRY LAW, PLLC**

By: */s/ Ryan Dry*
Ryan D. Dry
State Bar No. 24050532
Steven K. Cannon
State Bar No. 24086997
James D. Ewing
State Bar No. 24110821
909 18th Street
Plano, TX 75074
(972) 797-9510 Tele/Fax
rdry@drylaw.com
scannon@drylaw.com
jewing@drylaw.com

**ATTORNEYS FOR PLAINTIFF ATLANTIC SPECIALTY INSURANCE COMPANY**